JAMES O. BAKER ET AL., APPELLANTS, V. JOHN T. LOGAN ET AL., APPELLEES.

FILED OCTOBER 16, 1915. No. 18906.

1. **Drains:** DRAINAGE DISTRICT: APPORTIONMENT OF BENEFITS. Paragraphs 1 and 2 of the syllabus in *Baker v. Morrill Drainage District, ante,* p. 791, *held* applicable to and decisive of points 1 and 2 considered in this case.

2. ———: ———: ———: INJUNCTION: LACHES. The laches of plaintiffs, set out in the opinion, examined, and *held* a bar to relief by injunction.

APPEAL from the district court for Scott's Bluff county: RALPH W. HOBART, JUDGE. *Affirmed.*

*L. L. Raymond,* for appellants.

*Morrow & Morrow, contra.*

FAWCETT, J.

Plaintiffs, who are owners of lands and lots situated within the Morrill Drainage District in Scott's Bluff county, brought this suit against the defendants as directors and secretary, respectively, of the drainage district, to enjoin them from issuing or selling any securities based upon any apportionment of benefits attempted to be made on March 22, 1913, to property located within the district, and from issuing any bonds, warrants or other securities pledging the faith and credit of the district in carrying out the terms of an alleged illegal and void contract, entered into by the district with the United States government, and praying that such contract be declared illegal and void, and that defendants be enjoined from executing or carrying out any of the terms of said contract or from expending any moneys of the district in the carrying out or execution of the same, and that defendants be enjoined from apportioning any benefits to or levying or collecting any taxes or special assessments against the lands of the plaintiffs for the benefit of the district. The court found generally for the defendants, dissolved the temporary injunction, which had been theretofore issued, and dismissed the suit at the costs of plaintiffs. Plaintiffs appeal.

Three points are urged for reversal: (1) That the apportionment on March 22, 1913, was a reapportionment, and that notice of hearing on such reapportionment had not been given in the manner and for the time required by law; (2) that, as a matter of fact, no apportionment of benefits or levy was actually made on March 22; and (3) that a certain contract, made by the district with the United States Reclamation Service October 29, 1912, was *ultra vires*.

The argument in support of the first point is that notice was not published for ten days, as required by section 5636x4, Ann. St. 1911. It is contended, in opposition to the argument of plaintiffs, that the apportionment made March 22, 1913, was an original apportionment, and not a reapportionment. This contention is sound.

As to point 2, we deem it sufficient to say that the evidence in this case is substantially identical with that given in support of the same contention, in *Baker v. Morrill Drainage District, ante*, p. 791. We considered the contention of plaintiffs carefully in that case, and, for the reasons there given, point 2 must fail in this case.

Point 3 relates to a contract which had been entered into between the drainage district and the United States through its duly constituted officers of the United States Reclamation Service. This contract provided that, for a consideration of $7,500, to be paid by the United States to the drainage district, the drainage district was to construct and complete the ditch in accordance with plans and specifications, approved by the proper officers of the United States Reclamation Service; described the lands in which the United States is directly interested, dividing them into what they termed the "west system" and the "east system;" provided that the drainage district should procure the right of way for the government portions of the work before payment of the money should be made, which right of way should be 50 feet in width; that the United States should have the use of the ditches for a waterway for the conveyance of waters drained thereto from its main canal or other works of its project, "limited, however, to the carrying capacity of such ditches in excess of that necessary for the conducting of seepage and drainage water arising within the district;" that the United States might use such ditches for drainage and waterways.

The writer has examined the contract in the light of the points urged, and is of opinion that its terms are within the provisions of section 1893, Rev. St. 1913, and that the contract is not *ultra vires*, but will not take the time and use the space necessary to a discussion of that question, for the reason that the plea of estoppel, interposed by the defendants, is well sustained and disposes of the appeal. On the trial below, the facts upon which the estoppel is based were stipulated. This stipulation admits the meeting of the board of directors of the district on

March 22, 1913; that all of the plaintiffs, except plaintiff Bullock, appeared before the board and protested against any assessment being made; that thereafter the secretary of the board caused a detailed report of the assessment of benefits to be published, and also filed a detailed report of the apportionment of benefits with the county clerk of the county on March 24, 1913; that *all* of the plaintiffs appealed from that assessment to the district court. It further admits that on August 7, 1912, the directors of the drainage district prepared plans and specifications and an estimate of the work to be done thereunder; that the same was adopted by the board on that date, and on the same day filed with the county clerk of the county; that thereupon the board called an election and submitted to the electors of the district the proposition of proceeding with the work defined and described in the plans and specifications, and the question of incurring the necessary liability to carry on such work; that notice of the election was published and the election held on September 10, 1912, the day named in the notice. A copy of the published notice is contained in the stipulation and shows that it contained this information: "The estimated cost of the construction of said works is $20,038.55, $7,500 of which amount is to be paid by the United States government, leaving a balance of $12,538.55, to be paid by said drainage district." It also advised the voters that to raise the amount it was proposed to issue the bonds of the district due and payable in 20 annual instalments, with interest at the rate of 6 per cent. per annum. The stipulation also admits that at that election the result was, yes, 3,564; no, 3,025; "that thereafter, on the 14th day of November, 1912, a contract for the construction of the west drain was let to J. E. Mullen for the sum of $6,185.25, and said west drain was constructed and completed in accordance with the terms of said contract some time during the month of June, 1913, and said drain has been in operation since said date. It is further stipulated that all of the plaintiffs in this case voted at said election held on September 10, 1912, and voted against the proposition of proceeding with the

work and incurring the necessary liability." This suit was not commenced until November 3, 1913, or 14 months after the election authorizing the board to proceed with the plans and specifications theretofore adopted, in accordance with such plans, and in accordance with its contract with the United States—twelve months after the defendants had entered into the contract with Mr. Mullen for the construction of the west drain, and five months after Mr. Mullen had completed his work under the contract. The rule to be applied under such circumstances is well stated in 16 Cyc. 163, as follows: "Equity is equally careful to avoid injustice to third persons as to parties, and therefore will deny for laches the claim of one who has slept on his rights until third persons have acquired rights which would be affected by granting him relief." Applying that rule, it appears that, not only the rights acquired by the United States Reclamation Service, but also the rights acquired by Mr. Mullen to obtain payment for the large amount of work he has performed in constructing one of the important ditches of the defendant district, would be seriously affected, and in effect lost, if the relief prayed for in this suit were granted.

It follows that the district court did not err in denying an injunction and dismissing the suit of plaintiffs.

AFFIRMED.

HAMER, J., not sitting.